IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| NAZEER SMITH, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-cv-1138-NJR-DGW |
| C/O GROVES and C/O BOWERMAN, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendants James Groves and Richard Bowerman[1] (Doc. 51). On August 23, 2017, Plaintiff Nazeer Smith filed a response (Doc. 59). For the reasons set forth below, the motion is denied.

### BACKGROUND

The undisputed evidence reveals that Plaintiff Nazeer Smith ("Smith"), an inmate who was incarcerated at the Pinckneyville Correctional Center, was housed in cell R2:B38 from April 13, 2014, to April 27, 2014. From April 22nd to the 27th, the sink and toilet[2] in his cell stopped functioning, and a work order to fix the problem was

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate names of the following defendants: "C/O Groves" should be "James Groves," and "C/O Bowerman" should be "Richard Bowerman."
[2] Defendants argue that Smith's complaint (Doc. 1) does not mention a malfunctioning toilet and that they are therefore not required to address the issue. In the Order screening the complaint pursuant to 28 U.S.C. §1915, however, the Court found that Smith complained both of the lack of water and a "toilet [that] could not be flushed" (Doc. 7). Defendants did not object to the characterization of the Complaint as set forth in the screening Order. Defendants also sought information regarding the malfunctioning toilet during

requested by Correctional Officer Wolze (Doc. 52-2, pp. 56, 65, 76). That work order was completed, and the problem was resolved on April 29, 2014,[3] after Smith had been moved from the cell (Doc. 52-2, p. 54). During this time period, Smith had access to the day room twice per day, in the morning and the evening, for forty-five minutes to an hour where he could use a toilet, a sink, and a water fountain (Doc. 52-2, p. 9-10).[4] He also was able to fill a twelve-ounce cup of water and take it back to his cell, and he was able to access a toilet during yard time, which occurred three times per week (*Id.*). Smith spent twenty-one hours per day in his cell (Doc. 59, p. 28).

The following facts are disputed but, for purposes of summary judgment, they are viewed in the light most favorable to Smith. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Smith complained about the lack of running water to Defendants Groves and Bowerman, who are both correctional officers, on at least ten occasions beginning on the 22nd or the 23rd (Doc. 52-2, pp. 15, 19, 22-23). Defendants Groves and Bowerman were the officers who were on Smith's housing unit the most often and who the inmates spoke to if they had an issue (Doc. 52-2, p. 15). Smith believed they were his "wing officers" and the persons to whom he should have complained (*Id.* 16). Smith told Defendants Groves and Bowerman that he had no running water and that he had human waste in his toilet that he could not flush (Doc. 52-2, pp. 20, 23-24).

---

Smith's deposition. As such, the question whether Smith's toilet was functioning is an active factual issue in this lawsuit.

[3] The regular plumber at Pinckneyville had been transferred, and a temporary plumber only appeared towards the end of April (Doc. 52-2, p. 54). In addition, there also may have been some budgetary restrictions that prevented a more timely repair of the malfunctioning sink (*Id.*).

[4] On occasion, Smith did not use the sink or water fountain or toilet if it appeared unsanitary (Doc. 52-2, p. 12).

Smith requested the opportunity to fill up his water cup, he requested additional showers, and he requested to be moved (*Id*.). They said no and told him to wait for dayroom times (Doc. 52-2, p. 21-23), but they may have submitted a work order to rectify the situation (Doc. 52-2, p. 26).

Defendants Groves and Bowerman do not recall being told that Smith had plumbing or water issues during the relevant time period (Doc. 52-2, p. 46, 50). If they were notified of a plumbing issue, however, they would submit a work order or check to see that one was submitted (Doc. 52-2, p. 47, 51). They have no authority to either direct maintenance to perform work or to move an inmate, and they would not submit multiple work orders (Doc. 52-2, p. 48, 51). Sanitation supplies (disinfectant) were handed out weekly (Doc. 52-2, p. 52), but Smith was not given any such supplies during the time that he had no running water (Doc. 59, p. 28).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is

entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

Smith's sole claim is that Defendants Groves and Bowerman subjected him to unconstitutional conditions of confinement. Inmates are entitled to "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations marks and citations omitted). However,

> the Eighth Amendment does not provide a fixed formula for determining whether the effect of particular conditions constitutes cruel and unusual punishment, but rather draws its meaning from the evolving standards of decency that mark the progress of a maturing society. Conditions, alone or in combination, that do not, however, fall below the contemporary standards of decency, are not unconstitutional, and to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986) (internal editing marks and citations omitted). Thus, the Eighth Amendment is violated when:

(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and

(2) where prison officials are deliberately indifferent to this state of affairs.

*Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quotation marks and citation omitted).

As to the first objective prong, Smith must show conditions, individually or in combination "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need," that show the deprivation of a human necessity. *Budd v. Motley*, 711 F.3d 840, 842-843 (7th Cir. 2013). Prison officials have a duty to provide the "basic necessities of civilized life" which include sanitation and utilities. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). Thus, being in a cell for three days with no running water, feces smeared on the wall, and no cleaning supplies can be objective deprivations sufficient to withstand summary judgment. *Id.*; *See also Jackson v. Duckworth*, 955 F.2d 21, 21 (1989) (finding that the objective prong may be met by evidence of inadequate plumbing, vermin, smell of human waste, inadequate heating/light, lack of clean water, and other issues); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (objective prong may be met with evidence of six days confinement in a cell with feces smeared on walls, water of floor, and the deprivation of cleaning supplies and mattress/bedding); *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) ("Adequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded prisoners" (quotation marks and citation omitted)); *Budd*, 711 F.3d at 843 ("allegations of unhygienic conditions,

when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief").

Here, Smith went six days with no running water in his cell, a toilet with human waste that would not flush (and that he had to cover to reduce the smell), and no cleaning supplies. He was confined to his cell for twenty-one hours each day and denied water that entire time except when he went to dayroom, two times per day, and the yard, three times per week. Even when he had access to the water fountain in the day room, he was not able to use it on some occasions because it was "filthy" (Doc. 52-2, p. 12). A jury could find that these conditions, in combination, had the effect of denying Smith the basic human needs of water and sanitation.

Next, Smith must show that Defendants Groves and Bowerman were deliberately indifferent to his needs; that they "knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 689 (7th Cir. 2009). Smith testified that he complained to Defendants Groves and Bowerman about the conditions of his cell every time he saw them over a six day period. Taking this as true, Defendants Groves and Bowerman knew that the problem was not fixed during that time period. Yet, they did nothing besides put in a work order—they did not allow Smith extra water or time in the day room to clean up and shower, they did not provide cleaning supplies, they did not request or inquire about a cell change, and they did not follow up on the work order. *See e.g. Rogers v. Ashworth*, No. 15-cv-765-slc, 2017 WL 5312199, *6 (W.D. Wis. Nov. 13, 2017) ("a reasonable jury could conclude that [defendant's] failure to move plaintiff to a different cell, failure to order swampers to clean the cell, failure to provide plaintiff with

cleaning supplies or, at the very least, notify a supervisor of the situation, constitutes deliberate indifference").

Defendants Groves and Bowerman argue that they did not know about the threat posed to Smith's health and safety from the conditions in his cell. Smith's inability to use a toilet for the twenty-one hours that he was confined to his cell is an obvious risk to his health. "Whether a prison official was subjectively aware of a risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016), *quoting Farmer*, 511 U.S. at 842. Taking Smith's testimony as true, Defendants Groves and Bowerman knew that Smith did not have a working toilet and that he was confined to his cell, only to be let out in the morning and the evening and during yard to use the bathroom. A jury could conclude that Defendants' failure to act "in such circumstances suggests that the officials actually want the prisoner to suffer the harm." *Jackson*, 955 F.2d at 22.

Defendants Groves and Bowerman also argue that they are entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). To determine whether Defendants Groves and Bowerman are entitled to qualified immunity, the Court must consider two questions: whether "the facts that a plaintiff has alleged [ ] or

shown [ ] make out a violation of a constitutional right"; and, "whether the right was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations and quotation marks omitted); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). With respect to the second question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The plaintiff has the burden of establishing that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). While Smith need not present a "case directly on point," he must show that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 335, 341 (1986).

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted). "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants Groves and Bowerman limit their arguments to the lack of drinking water and do not squarely address the additional lack of a functioning toilet and the combined effect. There can be no doubt that Smith's right to the basic necessities of life, water and sanitation, was clearly established. *See Vinning-El*, 482 F.3d at 924. Because the evidence in the record, when construed in a light most favorable to Smith, indicates that

Defendants Groves and Bowerman essentially ignored Smith's right to humane conditions of confinement, they are not entitled to qualified immunity.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Groves and Bowerman (Doc. 51) is **DENIED**. Magistrate Judge Wilkerson is **DIRECTED** to recruit trial counsel for Plaintiff Smith.

**IT IS SO ORDERED.**

DATED: February 26, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**